UNITED STATES of America ex rel.
Frank STACHULAK,
Petitioner-Appellee,

v.

Joseph COUGHLIN et al.,
Respondent-Appellant.

No. 74–1155.

United States Court of Appeals,
Seventh Circuit.

Argued Jan. 6, 1975.

Decided Aug. 6, 1975.

William J. Scott, Atty. Gen., Jayne Carr, Asst. Atty. Gen., Chicago, Ill., for respondent-appellant.

Robert H. Smith, Chicago, Ill., for petitioner-appellee.

Before FAIRCHILD, Chief Judge, and STEVENS and SPRECHER, Circuit Judges.

FAIRCHILD, Chief Judge.

Petitioner Frank Stachulak was committed to the custody of the Illinois Director of Corrections pursuant to the Illinois Sexually Dangerous Persons Act, Ill. Ann.Stat., ch. 38, § 105–1.01 (Smith-Hurd 1970) *et seq.,* and confined at the

Psychiatric Division of the Illinois State Penitentiary at Menard in 1969. Four years later he brought this action under the federal *habeas corpus* statutes, 28 U.S.C. § 2241 *et seq.*, and Civil Rights Act, 42 U.S.C. § 1983, challenging both the lawfulness of his detention and the conditions of his confinement. The district court granted *habeas corpus* relief, *Stachulak v. Coughlin,* 369 F.Supp. 628 (N.D.Ill.1973), and respondents, Illinois correctional officials, appeal. We affirm.

I

Under the Illinois Sexually Dangerous Persons Act, the state may seek an involuntary indeterminate institutional commitment in lieu of a criminal prosecution if a person is charged with a criminal offense and believed to be sexually dangerous. Ill.Ann.Stat., ch. 38, § 105–3. By the Act's terms, *Id.* § 105–1.01,

> All persons suffering from a mental disorder, which mental disorder has existed for a period of not less than one year, immediately prior to the filing of the petition hereinafter provided for, coupled with criminal propensities to the commission of sex offenses, and who have demonstrated propensities toward acts of sexual assault or acts of sexual molestation of children, are hereby declared sexually dangerous persons.

Upon receipt of a petition alleging sexual dangerousness, a state circuit court appoints two psychiatrists to examine the person so charged. *Id.* § 105–4. The defendant is entitled to counsel and may demand a jury trial. *Id.* § 105–5. If, after a hearing, he is found to be sexually dangerous, he is committed to the custody of the Director of Corrections for care and treatment. *Id.* § 105–8. Once committed, a defendant can only secure his release by proving to the committing court that he is no longer sexually dangerous. *Id.* § 105–9.

The Act is silent as to what burden the state must meet to establish that a defendant is sexually dangerous. In accordance with the statute's designation that proceedings under the Act are "civil in nature," *Id.* § 105–3.01, the state trial judge instructed the jury that they could find Stachulak to be a sexually dangerous person if the state had proved its case by a preponderance of the evidence. Relying primarily on *In Re Winship,* 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970), the district court held that the Due Process Clause of the Fourteenth Amendment requires that the state's case for commitment must be proven by the more stringent beyond-a-reasonable-doubt standard applied in criminal actions. The court then ordered Stachulak enlarged unless within 60 days the state sought a renewed commitment order in proceedings in conformity to this holding.

Respondents contend on appeal that the reasonable doubt burden of proof is not constitutionally mandated for proceedings under the Sexually Dangerous Persons Act.

II

■ Although neither of the parties questioned our appellate jurisdiction, it is incumbent upon us to address this issue, for it concerns our power to hear the case. See *Carson v. Allied News Co.,* 511 F.2d 22, 23 (7th Cir. 1975).

■ The *habeas corpus* statutes follow the general rule that only final orders are subject to appellate review. 28 U.S.C. § 2253. Stachulak's complaint sought relief simultaneously under the *habeas* statutes, 28 U.S.C. § 2241 *et seq.,* and the Civil Rights Act, 42 U.S.C. § 1983. The district court granted the *habeas* relief but reserved ruling on the section 1983 claim pending further proceedings. The state appealed from the *habeas* order, but did not request and receive from the district judge an express determination, pursuant to Rule

54(b), Fed.R.Civ.P.,[1] that there was "no just reason for delay" and that final judgment should be entered. In the ordinary civil action involving multiple claims such a determination would be required for finality and appellate jurisdiction.

Through Rule 81(a)(2), Fed.R.Civ.P., the Federal Rules of Civil Procedure are applicable to *habeas corpus* proceedings "to the extent that such practice in such proceedings is not set forth in statutes of the United States and has heretofore conformed to the practice in civil actions."[2] The draftsmen of the rule plainly did not intend that *ipso jure* all the civil rules were operative in *habeas* actions. "Such specific evidence as there is with respect to the intent of the draftsmen of the rules indicates nothing more than a general and nonspecific understanding that the rules would have very limited application to *habeas corpus* proceedings." *Harris v. Nelson,* 394 U.S. 286, 295, 89 S.Ct. 1082, 1088, 22 L.Ed.2d 281 (1969). Thus, our court has not applied the rules of civil procedure as a matter of course in *habeas corpus* cases. See *Bijeol v. Benson,* 513 F.2d 965 (7th Cir. 1975) (Rule 23 inapplicable).

The Supreme Court in *Harris v. Nelson, supra,* suggested that the central considerations in determining the reach of Rule 81(a)(2) are the intended scope of the Federal Rules of Civil Procedure and the history of *habeas corpus* proceedings. There, the Court read Rule 81(a)(2) to exclude application of Rule 33 in *habeas corpus* actions because the discovery rules "are ill-suited to the special problems and character of such proceedings." 394 U.S. at 296, 89 S.Ct. at 1089. Although an amendment to Rule 81(a)(2) had changed the language, the Court apparently deemed that there was no change of substance. 394 U.S. at 293, footnote 3, 89 S.Ct. 1082.

■ A similar analysis compels a like result in this case. The essence of *habeas corpus* is that it provides "a prompt and efficacious remedy for whatever society deems to be intolerable restraints." *Fay v. Noia,* 372 U.S. 391, 401–02, 83 S.Ct. 822, 829, 9 L.Ed.2d 837 (1963). See also *Preiser v. Rodriguez,* 411 U.S. 475, 495–96, 93 S.Ct. 1827, 36 L.Ed.2d 439 (1973) and 28 U.S.C. § 2243. To delay an appeal from an order granting or denying such relief pending disposition of another claim, such as the civil rights claim here, conflicts with the emphasis on prompt decision. Since application of Rule 54(b) would necessarily result in delay in any case where the district court refused to enter a 54(b) order, the draftsmen of the civil rules must not have contemplated the rule's application in *habeas corpus* proceedings like the present one, where claims for non-*habeas* relief were joined and accepted along with claims for *habeas* relief.

1. Rule 54(b) reads:

Judgment Upon Multiple Claims or Involving Multiple Parties. When more than one claim for relief is presented in an action, whether as a claim, counterclaim, cross-claim, or third-party claim, or when multiple parties are involved, the court may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment. In the absence of such determination and direction, any order or other form of decision, however designated, which adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties shall not terminate the action as to any of the claims or parties, and the order or other form of decision is subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties.

2. Our research revealed only two cases in which Rule 54(b) was mentioned in a *habeas corpus* proceeding, *Stewart v. Bishop,* 403 F.2d 674 (8th Cir. 1968) and *Gray v. Swenson,* 430 F.2d 9 (8th Cir. 1970). *Stewart* was decided prior to *Harris v. Nelson,* 394 U.S. 286, 89 S.Ct. 1082, 22 L.Ed.2d 281 (1969), discussed in the text *infra,* and *Gray* accepted *Stewart's* application of the rule without reference to the analysis found in *Harris.* Moreover, these decisions dealt with cases in which there were more than one *habeas* claim, rather than a case like ours where *habeas* and non-*habeas* claims were joined.

We have also noted that an Illinois appellate court, relying on the decision of the district court in this case, recently held that the standard of proof for commitment under the Illinois Sexually Dangerous Persons Act is proof beyond a reasonable doubt, rather than preponderance of the evidence. *People v. Pembrock,* 23 Ill.App.3d 991, 320 N.E.2d 470 (1974), *leave to appeal granted.* This decision does not directly affect petitioner Stachulak nor moot his case, although it adopts the rule he seeks. The decision has not yet become final, and does not appear to be a construction of state law, but appears to rest on federal constitutional grounds. It does not foreclose or excuse us from independently examining the federal question presented.

### III

We have no doubt that the principles of due process in general must govern proceedings brought under the Sexually Dangerous Persons Act. Individuals who are committed pursuant to its terms most surely suffer a "grievous loss." *Morrissey v. Brewer,* 408 U.S. 471, 481, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972). The crux of this case is determining what process is due.[3] Recognizing that proceedings under the Act closely resemble criminal prosecutions, the Illinois courts have accorded some of the safeguards applicable in a criminal trial to individuals charged with sexual dangerousness. *People v. Studdard,* 51 Ill.2d, 190, 195–97, 281 N.E.2d 678, 681 (1972). For example, in addition to statutory rights to a hearing, jury trial, and counsel, Ill.Ann.Stat., ch. 38, § 105–5, a defendant is entitled to the right to confront and cross-examine witnesses, *People v. Nastasio,* 19 Ill.2d 524, 529–30, 168 N.E.2d 728, 731 (1960), the right against self-incrimination, *People v. English,* 31 Ill.2d 301, 307, 201 N.E.2d 455, 459 (1964) and the right to speedy trial, *People v. Beshears,* 65 Ill.App.2d 446, 459, 213 N.E.2d 55, 62 (1965).

Respondents, citing *Specht v. Patterson,* 386 U.S. 605, 87 S.Ct. 1209, 18 L.Ed.2d 326 (1967), contend that these rights and procedures are all that due process requires. In *Specht* the Court held that an individual could not be sentenced under the Colorado Sex Offenders Act, a statute similar in purpose to the one before us, unless he was accorded the fundamental protections of due process. Among these safeguards only the rights to be present with counsel, to be heard and offer evidence, and to confront and cross-examine witnesses were mentioned; no reference was made to the requisite burden of proof. 386 U.S. at 610, 87 S.Ct. 1209. However, the burden of proof question was not presented in *Specht,* and it was not until several years later that the constitutional stature of the reasonable doubt standard was explicitly affirmed. *In re Winship,* 397 U.S. 358, 364, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970). In consequence, *Specht's* failure to mention the reasonable-doubt standard as a due process requirement is not dispositive.

We agree with the district court that *In re Winship, supra,* is controlling. *Winship* held that the reasonable-doubt standard was an "essentials of due process and fair treatment" and thus applicable in adjudicatory juvenile delinquency hearings. The holding was grounded on the fact that, just as in a criminal prosecution, an adverse judgment raised the possibility of a loss of liberty and the certainty of stigmatization as a violator of the criminal law. 397 U.S. at 366–67, 90 S.Ct. at 1070.

Here, the loss of liberty is as great, if not greater, than the loss in *Winship.* The violator of the criminal law—be he

---

**3.** The question of the appropriate standard of proof in civil commitment proceedings under the Illinois Mental Health Code, Ill.Ann.Stat., ch. 91½, § 1–1 *et seq.* (Smith-Hurd 1974), is not before us. We do note, however, that an Illinois appellate court has recently held that the need for mental treatment in such proceedings need only be proved by clear and convincing evidence. *People v. Sansone,* 18 Ill.App.3d 315, 309 N.E.2d 733 (1974), *leave to appeal denied,* 56 Ill.2d 584.

an adult or juvenile—is imprisoned, if at all, in almost all cases for a definite term. The person found to be sexually dangerous, in stark contrast, is committed for an indeterminate period and is unable to attain his freedom until he can prove that he is no longer sexually dangerous.[4] Likewise with respect to stigma an involuntary commitment for sexual dangerousness presents an *a fortiori* case: Unlike the delinquency proceedings in *Winship,* these actions are not confidential, and an adjudication of sexual dangerousness is certainly more damning than a finding of juvenile delinquency.

Respondents nevertheless assert that the gravity of the incarcerated individual's loss is mitigated by the fact that the purpose of the commitment is to treat and cure the dangerous sexual deviant.[5] But this assertion is archaic. All too often the "promise of treatment has served only to bring an illusion of benevolence to what is essentially a warehousing operation for social misfits." *Cross v. Harris,* 135 U.S.App.D.C. 259, 418 F.2d 1095, 1107 (1969). It is well settled that realities rather than benign motives or noncriminal labels determine the relevance of constitutional policies. *In re Winship, supra,* 397 U.S. at 365–66, 90 S.Ct. 1068. See *In re Gault,* 387 U.S. 1, 21, 27, 50, 87 S.Ct. 1428, 18 L.Ed.2d 527

(1967), *Breed v. Jones,* 421 U.S. at 528, 95 S.Ct. at 1785, 44 L.Ed.2d 346 (1975).

Respondents and the State's Attorney of Cook County as *Amicus Curiae* also assail the reasonable-doubt standard as unworkable. Given the uncertainties inherent in the present state of psychiatric diagnosis and prediction, it is impossible, they argue, to prove beyond a reasonable doubt that a person is suffering from a mental disorder with a propensity to commit criminal sexual assaults. We are not unaware of the limitations of psychiatric diagnosis. Proof of mental state, however, is a commonplace in the law, and despite the difficulty of establishing many controverted facts in a criminal trial, we steadfastly adhere to the reasonable-doubt burden of proof. *Mullaney v. Wilbur,* 421 U.S. 684, 699–704, 95 S.Ct. 1881, 44 L.Ed.2d 508 (1975). If the disparate opinions of psychiatrists and the vagaries of proof and prediction suggest anything, it is the desirability of the utmost care in reaching the commitment decision. See, *e. g.,* Livermore, Malmquist & Meehl, On the Justifications for Civil Commitment, 117 U.Pa.L.Rev. 75 (1968).

Burdens of proof serve to allocate the risk of an erroneous decision between the parties in a lawsuit, and the reasonable-doubt standard reflects society's

---

**4.** The instant case illustrates the potential disparity in the magnitude of the loss. Stachulak was originally charged with Indecent Solicitation of a Child in violation of Ill.Ann.Stat., ch. 38, § 11–6 (Smith-Hurd 1969). That offense carried a maximum penalty of a $500 fine and less than one year imprisonment in a penal institution other than a penitentiary. Instead of prosecuting him on that charge, the state brought a proceeding, which culminated in an indeterminate commitment, under the Sexually Dangerous Persons Act. For the last five years, Stachulak has been confined at the Psychiatric Division of the Illinois State Penitentiary at Menard, a maximum-security penal institution.

**5.** Commitment of the mentally ill has been conventionally justified on two bases: the state's *parens patriae* authority to protect and care for the mentally ill and the state's police power to protect members of society against

threat to their persons and property. *O'Connor v. Donaldson,* 422 U.S. 563, 573–576, 95 S. Ct. 2486, 45 L.Ed.2d 396 (1975); *Humphrey v. Cady,* 405 U.S. 504, 509, 92 S.Ct. 1048, 31 L.Ed.2d 394 (1972). See Developments in the Law—Civil Commitment of the Mentally Ill, 87 Harv.L.Rev. 1190, 1207–28 (1974). While the Sexually Dangerous Persons Act specifies that the commitment is for treatment, Ill.Ann.Stat., ch. 38, § 105–8 (Smith-Hurd 1975), the Act's concern with dangerousness makes it clear that it rests on both these justifications. Nevertheless, since the Act is an alternative to a criminal prosecution, it is also in a very real sense a penal measure. Although in our view this factor has no bearing on the nature of the individual's potential deprivation of liberty, it fortifies our conclusion that due process requires proof of sexual dangerousness beyond a reasonable doubt.

judgment "that it is far worse to convict an innocent man than to let a guilty man go free." *In re Winship, supra,* 397 U.S. at 372, 90 S.Ct. at 1077. (Harlan, J., *concurring*). We recognize that society has a substantial interest in the protection of its members from dangerous deviant sexual behavior. But when the stakes are so great for the individual facing commitment, proof of sexual dangerousness must be sufficient to produce the highest recognized degree of certitude. *In re Ballay,* 157 U.S.App.D.C. 59, 482 F.2d 648, 667 (1973); *Lessard v. Schmidt,* 349 F.Supp. 1078, 1095 (E.D. Wis.1972) (three-judge court), *vacated on other grounds,* 414 U.S. 473, 94 S.Ct. 713, 38 L.Ed.2d 661 (1974), *on remand,* 379 F.Supp. 1376 (E.D.Wis.1974), *vacated on other grounds,* 421 U.S. 957, 95 S.Ct. 1943, 44 L.Ed.2d 445 (1975); *People v. Burnick,* 14 Cal.3d 306, 121 Cal.Rptr. 488, 535 P.2d 352 (1975). But see *Tippett v. State of Maryland,* 436 F.2d 1153 (4th Cir. 1971), *cert. dismissed as improvidently granted sub nom., Murel v. Baltimore City Criminal Court,* 407 U.S. 355, 92 S.Ct. 2091, 32 L.Ed.2d 791; *Lynch v. Baxley,* 386 F.Supp. 378, 393 (M.D.Ala. 1974) (three-judge court). See generally, Developments in the Law—Civil Commitment of the Mentally Ill, 87 Harv.L. Rev. 1190, 1295–1302 (1974).

Accordingly, we hold that due process requires that the reasonable-doubt standard be applied in proceedings under the Illinois Sexually Dangerous Persons Act.

## IV

Stachulak also challenges the Sexually Dangerous Persons Act as void for vagueness and overbreadth in violation of the Fourteenth Amendment's Due Process and Equal Protection Clauses. This attack was rejected by the district court, and respondents contend that Stachulak is barred from raising the issue in this court due to his failure to maintain a cross-appeal. Initially, Stachulak had

filed a cross-appeal, but on his own motion this was dismissed pursuant to Rule 42(b), F.R.A.P. Now, he relies on the rule that an appellee may urge any ground of record of the lower court's judgment. *Dandridge v. Williams,* 397 U.S. 471, 475–76, n.6, 90 S.Ct. 1153, 25 L.Ed.2d 491 (1970).

■ Whether a cross-appeal must be taken depends upon the position an appellee seeks to advance and its effect on the lower court's judgment.

Without a cross-appeal, an appellee may "urge in support of a decree any matter appearing in the record, although his argument may involve an attack upon the reasoning of the lower court or an insistence upon matter overlooked, or ignored by it." *United States v. American Railway Express Co.,* 265 U.S. 425, 435, 44 S.Ct. 560, 564, 68 L.Ed. 1087. What he may not do in the absence of a cross-appeal is to "attack the decree with a view either to enlarging his own rights thereunder or of lessening the rights of his adversary, whether what he seeks is to correct an error or to supplement the decree with respect to a matter not dealt with below." *Ibid.* The rule is inveterate and certain. *Morley Co. v. MD. Casualty Co.,* 300 U.S. 185, 191, 57 S.Ct. 325, 328, 81 L.Ed. 593 (1937).

■ The judgment of the district court ordered that if the state did not bring a renewed commitment proceeding within 60 days, Stachulak was to be enlarged. If Stachulak were to prevail on his contention that the statute is unconstitutional he would be entitled to his freedom instanter and could not be subject to a renewed commitment proceeding. It is plain therefore that he is not merely attempting to support the judgment but rather to expand his rights under the decree. Accordingly, in the absence of a properly maintained cross-appeal, the statute's constitutionality is not before us.[6]

---

6. Although Rule 3(c), F.R.A.P., does not require a specification of error, filing a cross-appeal places the appellant on notice that an appellee is attacking the judgment. In the instant case, for example, appellants, gauged by their initial brief, apparently thought that the

For the reasons set forth above, the judgment appealed from is affirmed.

question of the statute's validity was no longer contested after Stachulak dismissed his cross-appeal.

While our application of the rule may be considered technical, the rule nonetheless has continuing vitality and must be followed. *Swarb v. Lennox,* 405 U.S. 191, 201, 92 S.Ct. 767, 31 L.Ed.2d 138 (1972). *See generally* Stern, When to Cross-Appeal or Cross-Petition—Certainty or Confusion? 87 Harv.L.Rev. 763 (1974); 9 J. Moore & B. Ward, Moore's Federal Practice ¶ 204.11[3] (2d ed. 1973). See also Practitioner's Handbook for Appeals to the United States Court of Appeals for the Seventh Circuit 34 (1973).