**UNITED STATES of America ex rel. Clifford MORGAN and Donald L. Allen, Petitioners-Appellees,**

v.

**Allyn R. SIELAFF et al., Respondents-Appellants.**

**No. 76–1732.**

United States Court of Appeals, Seventh Circuit.

Argued Sept. 14, 1976.

Decided Nov. 22, 1976.

William J. Scott, Atty. Gen., Thomas E. Holum, Chicago, Ill., for respondents-appellants.

Gary H. Palm, Mark J. Heyrman, Chicago, Ill., for petitioners-appellees.

Before FAIRCHILD, SWYGERT and BAUER, Circuit Judges.

BAUER, Circuit Judge.

Respondents appeal the granting of a writ of habeas corpus to each of the members of the petitioners' class, which the district court certified as consisting of

"all persons presently in the custody of the Director of the Illinois Department of Corrections pursuant to commitments under the Sexually Dangerous Persons Act, Chap. 38, § 105–1 *et seq.*, Ill.Rev.Stat., and its predecessors, whose commitments were accomplished by use of a standard of proof less than beyond a reasonable doubt and whose commitments are final in accordance with the laws of the State of Illinois." *U. S. ex rel. Morgan v. Sielaff*, No. 76 C 1562 (N.D.Ill., July 7, 1976).

Petitioners sought the writs on the ground that a preponderance-of-the-evidence standard of proof had been used in their commitment proceedings rather than the reasonable-doubt standard required in such proceedings by this Court's recent holding in *United States ex rel. Stachulak v. Coughlin*, 520 F.2d 931 (1975), *cert. denied*, 424 U.S. 947, 96 S.Ct. 1419, 47 L.Ed.2d 354 (1976). Most, if not all, of the petitioners were committed before *Stachulak* was decided.[1] In granting the petitioners' motion for summary judgment, the district judge held that the suit was maintainable as a representative action, that the petitioners had exhausted their state remedies, and that *Stachulak* must be given retroactive effect. The respondents appeal from the granting of summary judgment on the three issues decided by the district court

and ask us to reconsider our holding in *Stachulak*. We decline to reconsider *Stachulak* and proceed to the other issues raised by the parties.

## I.

### REPRESENTATIVE ACTION

■ The respondents first argue that the district court erred in maintaining this suit as a representative action. They acknowledge that this Court recognized the aptness of representative habeas corpus actions in some circumstances in *Bijeol v. Benson*, 513 F.2d 965 (7th Cir. 1975),[2] but argue that the instant suit is inappropriate for a representative proceeding because the legal issue involved—the retroactive effect to be given our *Stachulak* decision—had not been definitively adjudicated for this Circuit at the time this action was brought. The respondents conceded at oral argument and in the district court[3] that in all other respects this case is appropriate for a representative proceeding.

The respondents' argument stems from the *Bijeol* panel's recitation of the factors that made a representative action appropriate in that case:

"Given the nature of the case, there can be no genuine issues of fact. The single issue of law presented is identical as to all prisoners sentenced under § 4208(a)(2) *and has already been definitively adjudicated for the circuit* by this court in *Garafola.* [*Garafola v. Benson*, 7 Cir., 505 F.2d 1212]. The number of § 4208(a)(2) prisoners at Terre Haute alone is too great for joinder of all to be practical."

1. The record is unclear as to whether the class includes persons committed after *Stachulak* was decided. A document filed with the district court listing all persons committed under the Illinois Sexually Dangerous Persons Act as of July 6, 1976 lists 9 persons who were committed after the date of the decision. The document does not indicate what standard of proof was used in their commitment proceedings.

2. While *Bijeol* involved federal prisoners, its holding regarding representative proceedings should apply as well to state prisoners. Not only are the same equities of judicial and plain-

tiff economy present in the state prisoners situation, but the case primarily relied on by the *Bijeol* court, *United States ex rel. Sero v. Preiser*, 506 F.2d 1115 (2d Cir. 1974), cert. denied, 421 U.S. 921, 95 S.Ct. 1587, 43 L.Ed.2d 789 (1975), was a representative proceeding involving state prisoners.

3. Respondents' Memorandum in Opposition to Petitioners' Motion for Summary Judgment, and Memorandum Concerning Class Action Relief and Venue at page 2 (filed June 29, 1976).

513 F.2d at 968 (footnote omitted and emphasis added).

Respondents read the emphasized language as setting forth a prerequisite for maintenance of a representative prisoner action. In support of their position so limiting the number of cases that may be brought on a representative basis they argue (1) that all decisions of this Court have the practical effect of a class action because they are always respected by the state and (2) that a great strain is placed upon federal-state relations when, absent an appellate court's "stamp of finality," state officials have to comply with an order affecting a large class of prisoners.

█ Certainly the respondents are correct that the legal issue involved here—whether *Stachulak* should be applied retroactively—had not yet been definitively adjudicated by this Court.[4] However, we do not think that the absence of a definitive court of appeals adjudication, in itself, precludes the district court from maintaining a representative action.

The *Bijeol* panel did not set down a strict formula which must be mechanically followed before a representative prisoners case may be brought. It merely followed the holding of the Second Circuit in *United States ex rel. Sero v. Preiser*, 506 F.2d 1115, 1125–27 (1974), *cert. denied*, 421 U.S. 921, 95 S.Ct. 1587, 43 L.Ed.2d 789 (1975), that a representative proceeding may be brought under certain circumstances, and found that the case before the court was an apt one.

█ As in *Sero*, the *Bijeol* court looked to the provisions of Rule 23 of the Federal Rules of Civil Procedure for guidance in determining whether a representative action was appropriate.[5] The list of factors noted in *Bijeol* and quoted above substantially tracks the prerequisites to a class action listed in Rule 23(a). The *Bijeol* panel mentioned that the issue of law had already been adjudicated for the Circuit, but apparently did so merely to provide added support for the proposition that the case involved a common question of law. Nowhere in *Bijeol* is it stated that only issues definitively adjudicated by this Court may be heard in representative prisoner actions. Moreover, in the *Sero* case relied upon in *Bijeol*, the representative action was maintained in the district court to decide questions of law which had never before been adjudicated by the court of appeals.

█ The respondents' policy arguments do not persuade us; rather, they strike us as thinly veiled attacks on the integrity of district court judgments. The implication that a party need not respect an adverse district court judgment as much as he would an appellate court judgment is contrary to the basic principles of our judicial system. Appellate courts *review* district court decisions, they do not impress them with their "stamp of approval and finality" as respondents argue. A district court judgment is itself final and binding on the parties. It, no less than a decision of this Court, must be respected as the law, absent an appeal to a higher court.[6]

Further, the alleged federal-state tensions generated by requiring compliance with a wide-reaching district court ruling that might be reversed by an appellate court may be minimized by requesting a stay of execution of the lower court's judgment pending appeal. Fed.R.Civ.P. 62; Fed.R.App.P. 8. In this very case, the respondents obtained such a stay. *United States ex rel. Morgan v. Sielaff*, No. 76–1732 (7th Cir., Aug. 2, 1976).

---

4. However, before this case was initiated, two other district judges had held that our *Stachulak* decision should be given retroactive effect. *Carlig v. Sielaff*, 75 C 422 (N.D.Ill., April 15, 1976) (McGarr, J.); *Volkmar v. Sielaff*, 75 C 1373 (N.D.Ill., April 15, 1976) (McMillen, J.).

5. Both courts, however, clearly pointed out that a representative prisoners proceeding is merely analogous to a Rule 23 class action, and that the provisions of Rule 23 need not be complied with precisely. 513 F.2d at 968; 506 F.2d at 1125–27.

6. Although respondents did not so argue, the logical extension of their argument would be to bar representative habeas corpus actions in any case not definitively adjudicated by the United States Supreme Court, a consequence surely not intended by the *Bijeol* panel.

■ Finally, the notion that representative actions against state officials are not necessary because state officials always respect federal court judgments is belied by the large number of Rule 23 class actions maintained against state officials in the federal courts. Only a representative proceeding avoids a multiplicity of lawsuits and guarantees a hearing for individuals, such as many of the class members here, who by reason of ignorance, poverty, illness or lack of counsel may not have been in a position to seek one on their own behalf. *Adderly v. Wainwright*, 58 F.R.D. 389, 405–7 (M.D.Fla.1972).

We thus conclude that the absence of a definitively adjudicated legal issue does not bar prisoners from bringing a representative habeas corpus action. In light of the respondents' aforementioned concession that this case is appropriate for a representative proceeding in all other respects, we hold that the instant representative action was properly maintained.

## II.

### EXHAUSTION OF REMEDIES

The respondents assert that the district court should not have heard the case because the petitioners failed to exhaust the state court remedies available to them at the time their petition was filed. 28 U.S.C. 2254; see *Fay v. Noia*, 372 U.S. 391, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963). We reject this claim because the only state remedies that respondents claim were available to the petitioners at that time, habeas corpus and mandamus, were in fact not available.

■ In Illinois an action for a writ of habeas corpus cannot be maintained to review nonjurisdictional claims arising from the original proceeding, even though such claims involve a denial of constitutional rights. *People v. Warr*, 54 Ill.2d 487, 298 N.E.2d 164 (1973); *People ex rel. Lewis v. Frye*, 42 Ill.2d 311, 247 N.E.2d 410 (1969). The claim here is not jurisdictional.

■ A writ of mandamus was not available because the strict conditions for its issuance were not present.[7] Under Illinois law, a party seeking such a writ must show, in the absence of exceptional circumstances which are not present here,[8] both that he has a clear right to the relief sought and that the defendant has a pre-existing duty to grant the relief. *Daniels v. Cavner*, 404 Ill. 372, 88 N.E.2d 823 (1949); *People ex rel. Pignatelli v. Ward*, 404 Ill. 240, 243, 88 N.E.2d 461 (1949). The Illinois Sexually Dangerous Persons Act does not provide for a detainee to be released when a court finds that the procedure leading to his commitment was unconstitutional; the duty to release arises only upon court order, *after* a finding that the detainee is dischargeable under the terms of the Act. Ill.Rev.Stat., chap. 38, §§ 105–9, 105–10. No court order to release the petitioners was issued before the initiation of this suit.[9]

7. Alternatively, we rely on *Wilwording v. Swenson*, 404 U.S. 249, 92 S.Ct. 407, 30 L.Ed.2d 418 (1971), which holds that 28 U.S.C. § 2254 does not require habeas corpus petitioners to pursue all possible alternative state remedies before filing their federal action. A suit for mandamus was one of the state remedies the petitioners in *Wilwording* were not required to exhaust. 404 U.S. at 249–50, 92 S.Ct. 407.

8. See *People ex rel. Scott v. Kerner*, 32 Ill.2d 539, 542–46, 208 N.E.2d 561 (1965), a Congressional reapportionment case in which the Illinois Supreme Court held that a mandamus action lay despite the absence of a pre-existing duty "where public issues of serious concern require speedy resolution." The instant case is readily distinguishable. Its issue is not public in the sense that a reapportionment question is,

and it does not require speedy resolution as an election case does.

9. The respondents also argue that the district court should have declined to hear the case in accordance with the principles of *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1974), and *Huffman v. Pursue, Ltd.*, 420 U.S. 592, 95 S.Ct. 1200, 43 L.Ed.2d 482 (1975). This argument is without merit because this action lacks the "necessary predicate for a *Younger* dismissal, that is, 'the opportunity to raise and have timely decided by a competent state tribunal the federal issues involved.' [*Gibson v. Berryhill*, 411 U.S. 564, 577, 93 S.Ct. 1689, 36 L.Ed.2d 488 (1973)]." *Huffman v. Pursue, Ltd.*, supra at 594, 95 S.Ct. at 1203.

## III.

RETROACTIVITY

In *Ivan v. New York*, 407 U.S. 203, 92 S.Ct. 1951, 32 L.Ed.2d 659 (1972), the Supreme Court gave retroactive effect to *In re Winship*, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1969), which required proof beyond a reasonable doubt in juvenile delinquency proceedings. The court said in *Ivan*:

> "Where the major purpose of a new constitutional doctrine is to overcome an aspect of the criminal trial that substantially impairs its truth-finding function and so raises serious questions about the accuracy of guilty verdicts in past trials, the new rule has been given complete retroactive effect. Neither good faith reliance by state or federal authorities on prior constitutional law nor accepted practice, nor severe impact on the administration of justice has sufficed to require prospective application in these circumstances." 407 U.S. at 204, 92 S.Ct. at 1952, quoting *Williams v. United States*, 401 U.S. 646, 653, 91 S.Ct. 1148, 28 L.Ed.2d 388 (1971).

In *Stachulak*, this Court expressly relied upon *Winship* in holding that proof beyond a reasonable doubt is required by the due process clause of the Fourteenth Amendment in commitment proceedings under the Illinois Sexually Dangerous Persons Act:

> "We agree with the district court that *In re Winship, supra*, is controlling. Winship held that the reasonable-doubt standard was an 'essentials [sic] of due process and fair treatment' and thus applicable in adjudicatory juvenile delinquency hearings. The holding was grounded on the fact that, just as in a criminal prosecution, an adverse judgment raised the possibility of a loss of liberty and the certainty of stigmatization as a violator of the criminal law. 397 U.S. at 366–67, 90 S.Ct. at 1070.

> Here, the loss of liberty is as great, if not greater, than the loss in *Winship*. The violator of the criminal law—be he an adult or juvenile—is imprisoned, if at all, in almost all cases for a definite term.

The person found to be sexually dangerous, in stark contrast, is committed for an indeterminate period and is unable to attain his freedom until he can prove that he is no longer sexually dangerous. Likewise with respect to stigma an involuntary commitment for sexual dangerousness presents an *a fortiori* case: Unlike the delinquency proceedings in *Winship*, these actions are not confidential, and an adjudication of sexual dangerousness is certainly more damning than a finding of juvenile delinquency." 520 F.2d at 935–36 (footnote omitted).

As in *Winship*, the reasonable-doubt standard of proof was announced in *Stachulak* to overcome an aspect of the proceeding that substantially impaired its truth-finding function:

> "Burdens of proof serve to allocate the risk of an erroneous decision between the parties in a lawsuit, and the reasonable-doubt standard reflects society's judgment 'that it is far worse to convict an innocent man than to let a guilty man go free.' . . . [W]hen the stakes are so great for the individual facing commitment, proof of sexual dangerousness must be sufficient to produce the highest recognized degree of certitude." 520 F.2d at 936–37.

 Given the purpose underlying the new constitutional doctrine announced in *Stachulak* and the reliance on *Winship* in the decision, *Ivan* compels us to give *Stachulak* retroactive effect.

AFFIRMED.