**UNITED STATES of America ex rel. Mervin GREEN, individually and on behalf of all others similarly situated, Petitioner,**

v.

**Howard PETERS, etc., et al., Respondents.**

**No. 93 C 7300.**

United States District Court, N.D. Illinois, E.D.

Jan. 25, 1994.

David J. Bradford, Locke B. Bowman III, Kathleen M. Banar, MacArthur Justice Center, William A. Von Hoene, Jr., Edward F. Malone, Jenner & Block, Randolph N. Stone, Mandel Legal Aid Clinic, for Peters, etc., et al.

Terence M. Madsen, Asst. Atty. Gen., Roland W. Burris, Atty. Gen. of IL, for U.S.

## MEMORANDUM OPINION AND ORDER

SHADUR, Senior District Judge.

This Court has recently had occasion to comment in its January 6, 1994 memorandum opinion and order (the "Opinion"), 1994 WL 8258 in more forceful terms than it would have liked, on the stance taken by the Attorney General in this action.[1] That discussion was not at all directed to the underlying

---

1. Throughout the Opinion, and in this opinion, reference has been made to "the Attorney General," although of course the actual preparation of the filings bearing his name is in the hands of his assistants. When the initial irresponsible filing was made in the individual habeas cases—one that astonishingly urged a lack of Article III case or controversy (Opinion at 3)—there was of course no reason to attribute that to the Attorney General himself: No one in his position can be expected to monitor each among the large volume of cases being handled by his office. And the same may be said as to the Attorney General's Office's second equally irresponsible contention that the habeas petitioners had not exhausted their available state remedies (Opinion at 7–8), when the whole problem is that they have been *prevented* from doing so by the inadequacies of the state system (after all, that's what this case is all about). But as the issues became more focused and as responsibility was assigned to the Chief of the Criminal Appeals Division (presumably reflecting official policy), it has become entirely reasonable to lay the matter at the doorstep

merits of the constitutional claims brought by petitioners, as to which the Attorney General certainly can and certainly should advance any and all appropriate substantive arguments with full vigor. Instead this Court spoke in terms of the procedural roadblocks that the Attorney General's representatives have sought to place in the way of addressing those merits. At the time of the Opinion those procedural roadblocks appeared to revive the worst aspects of a period of a half-century earlier, when a predecessor Illinois Attorney General had exercised every effort to close off the access of convicted felons to the courts to assert claims of constitutional deprivations.

Now petitioner Mervin Green has moved for the equivalent of class certification[2] for persons in custody of the Illinois Department of Corrections who fit the following description:

1. Each has filed a currently pending appeal in the First District of the Illinois Appellate Court from a non-capital felony conviction in the Circuit Court of Cook County.

2. Each is represented in his or her appeal by the Office of the State Appellate Defender.

3. Each has been sentenced to serve no more than 20 years in prison.

4. In each instance, the appeal has been pending for one year or more with no opening brief filed on his or her behalf, or he or she has been advised that a period of time greater than one year will elapse before an opening brief will be filed in his or her case.

In substantial part the Attorney General's response marks a continuation of the same pattern that the Opinion found so troublesome. Although the Attorney General gives lip service recognition to the similarities that are built into the proposed "class" definition, he opposes certification by urging the individual differences among the described prisoners.

Individual differences as such cannot of course block a decision in favor of certification. Individual plaintiffs *always* have claims that differ to one degree or another from each other. Just so, Rule 23(a)(3) requires only that the class representative claims be "typical" of the other class members' claims, *not* identical to those other claims. And in the same way Rule 23(b)(3) requires that the questions of law or fact that are common to class members "predominate" over such questions that affect only individual members, *not* that such individual questions be absent from the case.

In the universe that the Attorney General would prefer to occupy, each of the individuals within the putative class (estimated at some 300) would have to file his or her own habeas petition. Quite apart from the way in which such a regime would impose on the resources of the courts (and on the Attorney General's Office as well![3]), the obvious undesirability of a large number of individual petitioners clamoring for preference in the allocation of scarce resources (which everyone agrees to be presently inadequate resources) counsels strongly in favor of certification.[4]

---

of the Attorney General (like President Truman's "The buck stops here").

**2.** Although Fed.R.Civ.P. ("Rule") 23 does not apply to habeas corpus proceedings, both sides acknowledged (Petr. Mem. 2, Resp. Mem. 1–2) that in appropriate circumstances an analogous representative procedure may be ordered by the court (see *Bijeol v. Benson*, 513 F.2d 965, 968 (7th Cir.1975) and *Morgan v. Sielaff*, 546 F.2d 218, 220–22 (7th Cir.1976)). In accordance with the terminology that has become standard in the Rule 23 context, this opinion will employ "certification" to refer to a determination that the case may proceed as a representative action.

**3.** Is the Attorney General really urging a preference for having to deal with hundreds of individual petitions on an individualized basis, or does

the stated position rather manifest a cynical expectation that if the procedure is made as difficult as possible for the petitioners, that will discourage filings? If it is the latter, the parallel to the 1940s Attorney General's active promotion of a procedural merry-go-round, referred to in Opinion at 3–4, becomes even more pronounced.

**4.** It should be emphasized that the existing petitions do *not* assert that there are delays on the part of the Illinois Appellate Court itself once the appeals are ready for submission to and consideration by that Court. Thus the identified problem is in getting the appeals *into* the pipeline to begin with, not in the flow through and out of the pipeline.

But as always where legal rules are involved, it is best to see whether they comport with the result that common sense would consider the obvious answer to the question at issue. *Morgan*, 546 F.2d at 221 teaches that Rule 23 is a useful source of the guidelines for representative-case certification in habeas cases, though a petition need not comply "precisely" with the Rule 23 prerequisites in order to be found appropriate for such certification (*id.* at 221 & n. 5). This opinion will therefore go down the line in terms of the criteria prescribed by Rule 23.

### Rule 23(a)

Rule 23(a) sets up four preconditions to any certification:

(a) **Prerequisites to a Class Action.** One or more members of a class may sue or be sued as representative parties on behalf of all only if

(1) the class is so numerous that joinder of all members is impracticable,

(2) there are questions of law or fact common to the class,

(3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and

(4) the representative parties will fairly and adequately protect the interests of the class.

Each of those standards is readily met here, so long as the Attorney General's overly crabbed reading of the relevant concepts is not followed.

### Rule 23(a)(1): "Numerosity"

■ Sheer numbers are not made determinative by the Rule—it speaks instead of the impracticability of joining all class members. But as Judge Joel Flaum (now on our Court of Appeals, but then a District Judge) pointed out in *Edmondson v. Simon*, 86 F.R.D. 375, 379 (N.D.Ill.1980), "when the class is large, numbers alone are dispositive" of the issue. There is no question that a class of 300 is such that joinder is impracticable—and when the class is also fluid as it is here (with new members constantly meeting the class definition as time passes), the true impracticability of joinder is reinforced.

### Rule 23(a)(2): "Commonality"

■ It is of course unnecessary to certification "that all questions of law or fact raised in the litigation be common" (*Edmondson*, 86 F.R.D. at 380, one of the many cases so holding). Here there are numerous common legal questions as to the putative class of indigent prisoners who have suffered extended delays in the processing and determination of their appeals from their convictions: whether such delays violate the prisoners' rights to due process, equal protection or effective assistance of counsel, all as guaranteed by the Constitution. It should be remembered that the premise of this litigation is that the delays are systemic in nature, so that the class members share that factual matrix as well. Those matters are more than enough to satisfy Rule 23(a)(2).

### Rule 23(a)(3): "Typicality"

■ As already stated, the Attorney General's approach—essentially one that urges an impossible identity of claims as the prerequisite to certification—is at odds with the whole notion of class or representative actions. Instead the test for determining typicality is whether the class representative's claims "arise[ ] from the same event or practice or course of conduct that gives rise to the claims of other class members and his or her claims are based on the same legal theory" (*Rosario v. Livaditis*, 963 F.2d 1013, 1018 (7th Cir.1992)). Just to state that proposition demonstrates its perfect fit with this case: Green has been delayed in the resolution of his appeal because of the same systemic deficiencies that have created like delays for every other putative class member, and all such claims are based on the identical legal theories.

### Rule 23(a)(4): "Adequacy of Representation"

■ Adequacy of representation involves two components, the adequacy of the class representative and the adequacy of his or her counsel (*Edmondson*, 86 F.R.D. at 381). As for the former, it requires a "coextensiveness of interest"—that is, "the representative and the class members should share common objectives and legal or factual positions" (*id.*). And as for the latter, there can be no question raised in that respect (and to the Attorney General's credit, no suggestion to the contrary is made): Green's counsel number

attorneys from the MacArthur Justice Center, the University of Chicago Mandel Legal Aid Clinic and the Jenner & Block law firm. Any one of them would alone satisfy the adequacy requirement.

### Rule 23(b)

Once the Rule 23(a) hurdles have been surmounted (as they have been here), Rule 23(b) identifies three possible grounds for certification—any one of those being sufficient for the purpose. In this instance not just one but two of those grounds are clearly satisfied.

#### Rule 23(b)(1)(B)

■ As suggested earlier, one of the unfortunate aspects of the Attorney General's position is that it would pit all of the individuals complaining of an unconstitutional delay in obtaining the right to appeal—a right guaranteed to them by the State of Illinois— against each other, scrambling in an effort to gain access to the too-scarce resources that the Illinois General Assembly has made available. Nor would that position benefit the system, for it would provide no basis for addressing the problem in an orderly fashion.

Rule 23(b)(1)(B) authorizes certification if the prosecution of individual actions "would create a risk of ... adjudications with respect to individual members of the class which would as a practical matter ... substantially impair or impede [the] ability [of the other members] to protect their interests...." That language might have been written for the current case. Where as here it appears plain that the appointment of private counsel under 725 ILCS 5/121–13 should at least be considered by the Illinois Appellate Court to augment the inadequate resources of the statutorily-created public defenders offices, individual actions rather than a single representative-based action would create exactly the type of risk stated in the Rule.

#### Rule 23(b)(2)

■ What has already been said would suffice to call for certification—as already stated, it is enough that the criteria of Rule 23(a) and any one of the Rule 23(b) alternatives be satisfied. But here there is more, for Rule 23(b)(2) also authorizes certification if "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole." Once again that describes the posture taken by respondents here, so that the quoted provision provides an independent basis for certification.

### Conclusion

All of the necessary conditions for certification have been met. This Court orders that Green's Section 2254 Petition shall proceed as a representative action on behalf of all persons who meet the following definition from time to time during the pendency of this litigation:

Persons in custody of the Illinois Department of Corrections who fit the following description:

1. Each has filed a currently pending appeal in the First District of the Illinois Appellate Court from a non-capital felony conviction in the Circuit Court of Cook County.

2. Each is represented in his or her appeal by the Office of the State Appellate Defender.

3. Each has been sentenced to serve no more than 20 years in prison.

4. In each instance, the appeal has been pending for one year or more with no opening brief filed on his or her behalf, or he or she has been advised that a period of time greater than one year will elapse before an opening brief will be filed in his or her case.

That being the case, the previously-filed Petitions in *Odell v. Peters,* No. 93 C 5671, *Sanchez v. Peters,* No. 93 C 5672 and *Joy v. Peters,* No. 93 C 5673 will be deemed to have been filed as petitions in this action. Those actions are deemed technically closed, and all further pleadings shall be filed under this case caption and number.