**The People of the State of Illinois, Plaintiff-Appellee, v. Francis Beshears, Defendant-Appellant.**

**Gen. No. 64–104.**

Fifth District.

December 15, 1965.

Norman H. Kinder, Jr., of East St. Louis, for appellant.

John M. Karns, Jr., State's Attorney, of Belleville (Robert L. Jennings, of counsel), for appellee.

EBERSPACHER, P. J.

This defendant was arrested and placed in the St. Clair County jail on August 25, 1963. On November 27, 1963, the State's Attorney of St. Clair County filed an information charging that the defendant, Francis Beshears, on the 25th day of August, A. D. 1963, within the

County of St. Clair, did contribute to the sexual delinquency of a certain child, in that defendant, performed lewd fondling and touching of said child with intent to arouse and satisfy the sexual desires of said child and the defendant. On the same date the State's Attorney also filed a petition to have defendant declared a sexually dangerous person in which it was alleged that defendant had been charged with the crime of contributing to the sexual delinquency of a minor child, as stated above, and that he was suffering from a mental disorder which had existed for at least one year immediately prior to the filing of the petition, and that the mental disorder was coupled with criminal propensities to the commission of sex offenses. The petition alleged that defendant had been arrested on July 22, 1956 on a charge of statutory rape for having, allegedly, had sexual intercourse with a seven-year-old girl, and that he had been arrested again on September 20, 1959, for having, allegedly, molested an eleven-year-old girl. The petition prayed that the court appoint two qualified psychiatrists to make a personal examination of the defendant in order to ascertain whether he was sexually dangerous.

An order was entered on November 27, 1963 appointing Doctors Groves B. Smith and John H. McMahan to examine the respondent in order to ascertain whether he was sexually dangerous.

On May 20, 1964, a hearing was held in the Circuit Court of St. Clair County. Prior to this time Mr. Beshears had been represented by retained counsel who had evidently withdrawn from the case at this time, and the Public Defender in St. Clair County, was appointed to represent the defendant. At this time the Public Defender made a motion that the defendant be discharged on the basis of the "four months" rule since he had been incarcerated in the County Jail in excess of 120 days. The court stated that this was a civil proceeding and

448

the civil rule would apply and the motion would be denied.

At the hearing, a witness testified that he was a Sergeant on the East St. Louis Police Department and that on July 22, 1956, he had had occasion to arrest the defendant. The Sergeant further testified that at that time this defendant had freely and voluntarily given a statement and the said statement was offered into evidence. The nature of the complaint at that time, which was made either by the minor girl or by her mother, was that the girl had been molested by defendant.

Another witness testified that on September 20, 1959, he was employed as an usher at the Majestic Theatre in East St. Louis. While working that day he received a complaint that the defendant was bothering some small girls in the show. He went upstairs in the balcony and watched him over the side where he saw the defendant bothering some small girls and the police were called to the scene. Mr. Beshears was not arrested at the Majestic Theatre since he had already left the scene. However, he was arrested on the street near the theatre. The witness testified that he saw the defendant touch the legs of one little girl but he could not tell if her dress was up or disarranged, nor did he see him touch any other part of her body.

Another Sergeant testified that on September 20, 1959, he was a member of the East St. Louis Police Department and that on that date he received a call to investigate a molestation of a child at the Majestic Theatre. After arriving at the theatre the police were told that the defendant had left and walked down Collinsville Avenue toward Missouri and they went out and subsequently placed him under arrest in the 400 block of North Fifth Street. He was brought back to the Majestic Theatre and identified by the girl and then taken to the police station.

No oral or written statement was taken at that time. The girl had told the police that the defendant was playing with her legs but the Sergeant did not remember whether or not she stated that he had his hand under her dress or on her knee or thigh.

Disposition of neither of these charges is shown in the record, and no record of conviction on either of these two charges was introduced into evidence.

The defendant was called by the State's Attorney under Section 60 of the Civil Practice Act. A timely objection was made to calling him under this section on the basis of the privilege against self-incrimination; the motion was overruled. After reading his statement of July 22, 1956, defendant testified that it bore his signature but that he was not sure whether it was correct since it had been such a long time ago; that he had a propensity to want to touch and fondle little girls since he came back from Korea; that on Sundays he drank quite heavily and that is when he usually got into trouble. That all he did to the girls was to kiss them several times, and never went any farther. That he was examined by two doctors but he did not know who they were or what they were.

The psychiatric reports of Dr. Smith and Dr. McMahan were introduced into evidence. Neither defendant nor his attorney was ever given a chance to examine these reports; and when the court commented that the defendant should be furnished copies, the Assistant State's Attorney stated that their office only had one copy.

The psychiatric report of Dr. McMahan, states that,

> "There is no psychiatric disorder. In my opinion the above has sufficient mental capacity to understand the charges made against him and to aid and dispate in his own sense."

It has been suggested that the last five words were probably intended to be "participate in his own defense."

The psychiatric report of Dr. Smith, after reciting a number of admissions and statements which tended to incriminate defendant, concludes,

> "Diagnosis-sexually dangerous person under the meaning of the Sexually Dangerous Act; inadequate personality with definite character changes of a sex deviate type."

After hearing the evidence the court declared the respondent to be a Sexually Dangerous Person and committed him to the care and custody of the Director of Public Safety.

Defendant by his court appointed attorney, has most capably and studiously presented to this court by both brief and oral argument, 5 assignments of error.

He urges first, that the psychiatric reports did not establish that defendant was a sexually dangerous person and that the order finding him to be sexually dangerous was against the manifest weight of the evidence; Second, that defendant should have been furnished copies of the psychiatric reports prior to the time of the hearing on the petition; Third, that the court erred in forcing defendant to testify at the hearing as an adverse witness under the provisions of Section 60 of the Civil Practice Act; Fourth, Beshears should have been discharged from custody by the trial court because he was held in jail in excess of 120 days in violation of Chapter 38, Sec 103-5, Ill Rev Stats 1963; and lastly, that error was committed when testimony concerning defendant's two prior arrests on similar charges was allowed into evidence.

In support of the first contention, appellant cites People v. Howell, 12 Ill App2d 84, 138 NE2d 691, where the question of whether or not the defendant was a sexually dangerous person was tried before a jury. The evidence revealed that one doctor filed his report, which stated it was his opinion that the defendant did classify as a

451

sexually dangerous person, and recommended that defendant be tried under the Sexually Dangerous Persons Act. The report of the other doctor concluded that defendant was an exhibitionist, and stated that he did not believe defendant was sexually dangerous. The only other persons testifying were the defendant, who contended that he was changing his trousers while seated in his automobile on a country road, and the County Jailer, who testified that during the months defendant was in jail no evidence of abnormal sexual conduct on the part of defendant was observed or reported. The court, in holding that the verdict was against the manifest weight of the evidence, said,

> "We have carefully reviewed the evidence in this case. We have noted the differences in the testimony of the two psychiatrists who testified on behalf of the People, one stating that defendant was a sexually dangerous person, the other stating that he was not. Particular attention has been directed to the testimony of the Deputy Sheriff, in whose custody defendant remained for several months prior to the trial. Although the jury is primarily judge of the facts and the weight and credibility of the evidence, we should not hesitate to reverse a judgment where the evidence on which it is based is of an unsatisfactory character. A reviewing court will set aside a verdict which is against the manifest weight of the evidence."

Here Dr. Smith's diagnosis was that Beshears was a sexually dangerous person under the Act, and Dr. McMahan's diagnosis was that there was no psychiatric disorder. In the Howell case both doctors agreed there was no psychiatric disorder, but only one doctor diagnosed the defendant as a sexually dangerous person. We consider the reports in this case as much in conflict as they were in that case, however in view of the state

452

of this record, it is not necessary to determine whether the order was against the manifest weight of the evidence.

The State urges that there was no error in not furnishing copies of the reports to defendant or his counsel since defendant's counsel in the trial made no request for them until the close of all the evidence. In view of the state of this record, we need not determine whether the failure to furnish copies was in this case reversible error, but would call attention to the mandatory language of the statute, Ill Rev Stats 1963, ch 38, sec 105-4 and the case of People v. McDonald, 44 Ill App2d 348, 194 NE 2d 541 in which the court said:

> "The present action being predicated upon an insufficient petition which petition failed to allege facts tending to show that the person named is a sexually dangerous person and the failure to file with the Court and deliver a copy to defendant of the written findings of the psychiatrists compels us to reverse and remand this cause."

If the defendant had been forwarded copies of the reports, as required by statute, Dr. McMahan's conclusion of "no psychiatric disorder" could have been emphasized to the court, and defendant's privilege against self-incrimination in statements and admissions to Dr. Smith could have been preserved.

The State contends, in answer to the last three contentions of defendant, that such contentions are directed entirely to a criminal proceedings, and that the proceedings under the Sexually Dangerous Persons Act are civil in nature and have no connection with the question of criminal guilt or innocence of the defendant, and that the provisions of the Civil Practice Act apply. The statutory provision, Sec 105-3.01, Code of Criminal Procedure of 1963, is:

453

"The proceedings under this Act shall be civil in nature. The provisions of the civil Practice Act including the provisions for appeal, and all existing and future amendments of said Act and modifications thereof and the rules now or hereafter adopted pursuant to said Act shall apply to all proceedings hereunder except as otherwise provided in this Act."

■ That the objective of the Act is the care and treatment of sexually dangerous persons, as well as the protection of society by sequestering the sexual psycopath so long as he is dangerous and to subject him to treatment so that he might recover from his condition and be rehabilitated is conceded.

In People v. Redlich, 402 Ill 270, 83 NE2d 736, our Supreme Court construing the Act said at page 275:

"The foregoing statute was the subject of consideration by this court in People v. Sims, 382 Ill 472, where the act was held valid. It was there unsuccessfully contended that the act was invalid in discriminating between criminal sexual psychopathic persons who are charged with crime and those who are not so charged and in permitting evidence of the commission of other crimes to be introduced upon hearing. This court in the Sims case pointed out that the proceeding provided for by the act is not a criminal proceeding and that the statute is in its operation not unlike the statutes providing for an inquiry into the sanity of one charged with crime before trial on the indictment."

and at page 276:

"The trial of the question of his insanity, feeble-mindedness, or psychopathy, as defined by statute, is no part of the criminal proceedings, has no connection with his guilt or innocence, and is not in

454

aid of a determination of that question, but the sole object of the proceeding is to ascertain the mental condition of the accused, whether or not insane, feebleminded or psychopathic, as defined by statute, so as to determine if he should be required to plead to the indictment and be placed upon trial for the offense charged."

In the present case, the trial court in denying the motion for discharge on the basis of the "four months" rule and in ruling on the objection to defendant being called under Section 60 of the Civil Practice Act, considered the proceeding to be civil and that the Practice Act would apply. In People v. Capoldi, 10 Ill2d 261 at page 267, Chief Justice Klingbiel said:

"The State argues, however, that the present proceeding is not a criminal case, and that the statements were not admitted in their character as confessions but merely as admissions against interest.

"Insofar as the present requirements of due process are concerned, it is of little significance that the proceedings are civil in nature. A defendant found to be a sexually dangerous person under the act is deprived of his liberty as a consequence, and must be accorded the protections of due process in his trial."

In People v. Olmstead, 32 Ill2d 306, 205 NE2d 625, the Supreme Court, in an opinion dealing with this Act, speaking through Justice Solfisburg, said:

"We agree that although these proceedings are called civil in nature, they may result in a deprivation of liberty and a defendant must be accorded the essential protections available in a criminal trial."

citing the Capoldi case.

■ The Capoldi case was likewise cited in People v. Nastasio, 19 Ill2d 524, 168 NE2d 728, in which a hearing was conducted under this Act, certain depositions, taken outside the presence of the defendant, were introduced into evidence. The Supreme Court, speaking through Justice Schaefer, said:

"To sustain the use of depositions in this case, the People emphasize the civil nature of proceedings under the Sexually Dangerous Persons Act, and point out that the authority to use depositions in a civil case is of course unquestioned. . . .

"Despite this legislative direction that proceedings under the act shall be civil and that the Civil Practice Act shall apply, the proceedings in fact closely resemble criminal prosecutions in many critical respects. A hearing may be had only after the defendant is charged with a criminal offense, evidence of crimes may be introduced at the trial, and an adverse verdict subjects the defendant to indefinite incarceration. Ill Rev Stats 1959, chap 38, pars 822, 824, 825a. This court had these similarities in mind when it held that admission in evidence of statements in the nature of confessions, without preliminary proof of their voluntary character, violates due process of law in commitment proceedings under the act as well as in trials for criminal offenses. People v. Capoldi, 10 Ill2d 261, 139 NE2d 776.

"Similar considerations are operative here. Many decisions suggest that difficult constitutional issues would be raised by the use of depositions in proceedings which so closely resemble criminal prosecutions. . . . It is our duty so to interpret the statute as to promote its essential purposes and to avoid, if possible, a construction that would raise doubts as to its validity. Both ends will be served by holding, as we do, that while the general structure of the Civil Practice Act has been adopted, the use

456

of depositions taken out of the presence of the defendant has not been authorized."

The basis of the privilege against self-incrimination is found in the Constitution of the State of Illinois in which it is stated, "No person shall be compelled in any criminal cause to give evidence against himself," art II, section 10; and while this provision is very narrow, purporting to apply only "in any criminal cause" it has been interpreted in a somewhat broader view. In Kantner v. Clerk of the Circuit Court, 108 Ill App 287 at page 301, the court said:

> "The constitutional exemption from compulsion in this regard extends to all proceedings sanctioned by law.
> "Neither civil nor criminal courts, quasi-judicial tribunals, grand juries, commissioners, courts martial or inquisitors of any kind can compel a person to give evidence which may tend to convict him of a criminal offense."

The question of the privilege against self incrimination as afforded to a defendant under the Sexually Dangerous Persons Act has been decided by the Supreme Court of Illinois in People v. English, 1964, 31 Ill2d 301, 201 NE2d 455. In that case a petition was filed under the Sexually Dangerous Persons Act to have the defendant declared a sexually dangerous person. The court appointed two qualified psychiatrists to personally examine defendant as provided by the statute and order the defendant to appear before them individually for an examination. English appeared before the psychiatrists and informed each of them that he felt the compulsory examination was a violation of his constitutional right. No examination was conducted and the court held the defendant in contempt of court. After discussion of the nature of the privilege against self incrimination and of due process as applied to a proceeding under the Act in

question the Supreme Court, speaking through Justice House, said at page 307:

> "We hold that the privilege against self incrimination protects defendant from making any statements to the psychiatrist which may tend to incriminate him."

The court continued:

> "This does not mean, however, that defendant is privileged from submitting to any examination. In People v. Greer, 28 Ill2d 107, and People v. Munziato, 24 Ill2d 432, we held that the privilege protects only against testimonial compulsion."

The privilege protects against testimonial compulsion. ■ We therefore hold that in a proceeding under the Sexually Dangerous Persons Act the calling of the defendant under Section 60 of the Civil Practice Act, when objection is made, is a violation of the defendant's constitutional privilege against self-incrimination.

Section 103–5 of The Code of Criminal Procedure provides, in essence, that every person in custody for an alleged offense shall be tried within 120 days from the date he was taken into custody unless the delay is occasioned by the defendant, by a competency hearing, or by an interlocutory appeal. Every person not tried in this period of time is to be discharged from custody or released from the obligations of his bail or recognizance as the case may be.

■ While there are no cases on this point it does not appear that a psychiatric examination conducted under the provisions of the Sexually Dangerous Persons Act is the type of competency hearing contemplated by this section. The competency provisions of the Code are found in ch 38, § 104–1 et seq., and are concerned with the ability of a defendant to understand the nature and purpose of the proceedings against him or his ability

to assist in his own defense. This was not the type of phychiatric examination to which Beshears was subjected, even though it is possibly the type of conclusion that was made by Dr. McMahan.

In this aspect of the case, perhaps more so than in any other, it is quite clear how the requirements of due process were violated. Mr. Beshears was arrested on August 25, 1963 and was placed in the St. Clair County jail in Belleville. On November 27, 1963, or some three months and two days after the arrest, an information and petition were filed in the Circuit Court of St. Clair County. On that same day, November 27, 1963, an order was entered appointing the two psychiatrists to examine the respondent. The psychiatrists were quite prompt in making their reports; Dr. Smith's is dated December 6, 1963, and Dr. McMahan's is dated December 12, 1963. The hearing in the Circuit Court was held on May 20, 1964, some five to six months after the psychiatric reports were completed. There is not one scintilla of evidence in the record that any of the delay was caused by the respondent. These are the facts and if a person can be incarcerated for this period of time and cannot remedy the situation because the Act is "civil in nature" then the Act is fraught with danger and the possibilities of its abuse are frightening.

█ The courts of Illinois have frequently admonished that due process of law must be followed in proceedings conducted under the Sexually Dangerous Persons Act; People v. Capoldi, supra; People v. Nastasio, 1960, supra; People v. Olmstead, supra, because of the possibility of lengthy incarceration and the close connection with the Criminal Law. When a respondent has been incarcerated for approximately nine months, and none of the delay is attributable to him, between the time of arrest and the time of trial it cannot be said that due process of law has been met.

■ The General Assembly has seen fit to incorporate into the Act, Section 5 (Code of Criminal Procedure, Sec 105–5) which provides in part:

"At the hearing on the petition it shall be competent to introduce evidence of the commission by the respondent of any number of crimes together with whatever punishments, if any, were inflicted."

The courts recognize that there is a fundamental difference between the introduction into evidence of an arrest and the introduction into evidence of a conviction. In People v. Bennett, 413 Ill 601, 110 NE2d 175, the defendant was charged with burglary and larceny. The State's Attorney, during the course of the trial, made inquiry as to whether defendant had been arrested since March 19, 1951. The Trial Court required defendant to answer this question. The Supreme Court of Illinois, in its review of that case, said:

"It is fundamental that mere proof that a party has suffered arrest cannot be used against him at a criminal case. The rule is different, however, where the defendant has previously been convicted of a felony, but even then only the record of the conviction or a certified copy thereof may be introduced as proof. People v. Herbert, 361 Ill 64, 196 NE 821, People v. Garippo, 321 Ill 157, 151 NE 584, People v. Schultz-Knighten, 277 Ill 238, 115 NE 140. Evidence of such arrest could not but prejudice the defendant before the jury. The defendant has a right to be tried by the law of the land, and a conviction secured through the use of improper questions cannot be condoned. People v. Page, 365 Ill 524, 6 NE2d 845, People v. Garinas, 314 Ill 413, 145 NE 699. The admission of the evidence was error."

In the instant case, no certified copy of any conviction nor any record of any conviction were introduced into

evidence nor was there any testimony that Beshears was ever convicted of any crime. The only evidence, concerning this aspect of the case, in the record, is the testimony of the policeman from the East St. Louis Police Department that the defendant has been arrested on two prior occasions for offenses similar to that involved in this case. This evidence was not competent, because evidence of arrests is not competent to prove "commissions of crimes."

The order of the circuit court must be reversed, and in view of the fact that the criminal charge on which defendant was held in jail for more than four months cannot be prosecuted, and thus cannot serve as the basis for proceedings under the Sexually Dangerous Persons Act, no proper legal purpose would be served by remanding this cause.

The judgment declaring the defendant Francis Beshears a sexually dangerous person, is reversed.

MORAN and GOLDENHERSH, JJ., concur.