In the

# United States Court of Appeals

## For the Seventh Circuit

No. 11-3690

RICHARD L. AMBROSE,

*Petitioner-Appellant,*

*v.*

ZACH ROECKEMAN, Warden,

*Respondent-Appellee.*

Appeal from the United States District Court for the
Southern District of Illinois.
No. 3:10-cv-00172-DRH — **David R. Herndon**, *Chief Judge.*

ARGUED OCTOBER 4, 2013 — DECIDED APRIL 15, 2014

Before BAUER, EASTERBROOK, and ROVNER, *Circuit Judges.*

ROVNER, *Circuit Judge.* This case comes to us on appeal from the district court's denial of a petition for habeas corpus by Richard Ambrose pursuant to 28 U.S.C. § 2254. In the habeas petition, Ambrose challenged the constitutionality of his involuntary commitment under the Illinois Sexually Dangerous Persons Act (the "SDPA"), 725 ILCS 205/0.01-205/12. We affirm.

Ambrose's path to involuntary commitment began in October 1998, when the State of Illinois charged him with four counts of predatory criminal sexual assault pursuant to 720 ILCS 5/12-14.1(a)(1) (1998), stemming from his alleged sexual penetration of his five-year-old daughter and her five-year-old friend. In February 1999, the state sought civil commitment of Ambrose under the SDPA, which allows for the indefinite civil commitment of a person who had not yet been convicted of a sexual offense upon establishing that the person has a mental disorder that renders him or her a sexually dangerous person under 725 ILCS 205/1.01. A jury found him to be a sexually dangerous person, and the state court ordered him committed in May 1999.

The SDPA provides a vehicle for a committed person to seek release on the basis that he or she has recovered and is no longer a sexually dangerous person. See 725 ILCS 205/9. Ambrose sought release from that civil commitment with the filing of a recovery application in December 2005. *Id.* The state court denied that recovery application in June 2008,[1] and Ambrose filed his petition for habeas relief in March 2010.

In his habeas petition, Ambrose alleged that his continued confinement was unconstitutional on a number of grounds, but pursues only one due process claim on appeal. He argues to

---

[1]   The 2-1/2 year gap between the submission of the recovery application and the denial was of concern to us and when questioned at oral argument, counsel for Ambrose acknowledged that it was substantial and was unable to explain it. As Ambrose has not asserted any claim related to that delay, we make no further inquiry into it except to note that such delay, if not attributed to the petitioner, is deeply troubling.

this court that his due process rights were violated when, at the hearing on his recovery application, evidence was admitted of allegations of abuse made against him in two other states, Arizona and Indiana.

Although acknowledging that evidentiary errors are rarely a basis for habeas relief, Ambrose nevertheless argues that such relief is proper here because the evidentiary ruling was so prejudicial that it compromised his due process right to a fundamentally fair trial. Ambrose argues that the allegations were improperly admitted into evidence through Dr. Angeline Stanislaus, a Big Muddy Correctional Center psychiatrist, who testified as to two alleged prior instances of out-of-state abuse in Arizona and Indiana based on statements allegedly made by victims to social workers and police. Although Ambrose focuses solely on the testimony by Dr. Stanislaus, the Illinois appellate court order from the denial of the recovery application indicates that such allegations were also revealed by Dr. Mark Carich, a Big Muddy Correctional Center service and psychologist administrator. According to the Illinois appellate court, Dr. Carich stated that in compiling his report evaluating whether Ambrose was recovered, he considered in part the underlying offenses which contributed to Ambrose's commitment as a sexually dangerous person, including the jury's finding that Ambrose had sexually abused his five-year-old daughter and her five-year-old friend in 1998, and allegations that Ambrose sexually abused an eight-year-old girl in Indiana in 1998 and a six-year-old stepdaughter in Arizona in 1991. *People v. Ambrose*, No. 4-08-0664, Unpublished Order at 4–5 (Ill. App. 4th Dist., July 9, 2009), Petitioner Appendix 23–24. Ambrose argues that the admission of such allegations was so

prejudicial that it compromised his due process right to a fundamentally fair trial.

There are multi-tiered problems with that claim, including preliminary concerns that Ambrose failed to adequately raise that challenge in the district court and that the claim was procedurally defaulted in state court. We will peel through those layers sequentially.

First, respondent-appellee Roeckeman (hereinafter the "State") maintains that Ambrose's habeas petition to the district court did not raise a due process challenge to the admission of the out-of-state abuse allegations, and therefore the issue is not properly before us. According to the State, the habeas petition challenged that admission only on Confrontation Clause grounds, and his due process claim was distinct from that challenge. We have repeatedly emphasized that pro se petitions are to be construed liberally, and should be held to standards less stringent than formal pleadings drafted by attorneys. *Ray v. Clements,* 700 F.3d 993, 1002-03 (7th Cir. 2012), citing *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Koons v. United States*, 639 F.3d 348, 353 n.2 (7th Cir. 2011). As we noted in *Osagiede v. United States*, 543 F.3d 399, 405 (7th Cir. 2008), "[p]ro se petitioners will, at times, confuse legal theories or draw the wrong legal implications from a set of facts … [b]ut we do not treat every technical defect as a grounds for rejection." The question for us is whether the petition adequately presents the legal and factual basis for the claim, even if the precise legal theory is inartfully articulated or more difficult to discern. *Id.*; *McGee v. Bartow*, 593 F.3d 556, 565–66 (7th Cir. 2010). Here, the claim was asserted in the context of a Confrontation Clause challenge, but that claim immediately followed

a generalized claim that he was denied a fair trial in violation of the Due Process Clause. The factual allegations of the claim and the harm identified were applicable to both the Confrontation Clause and Due Process Clause allegations. In the context of a pro se pleading and consistent with our commitment to liberal construction, we hold that the petition adequately presented the claim to the district court, and therefore may be raised on appeal.

That leads to the next hurdle, which is whether the claim was procedurally defaulted at the state level and therefore cannot be presented in a habeas petition. Ambrose acknowledges that the claim was not brought on direct appeal from the denial of the recovery application and was therefore procedurally defaulted in state court. See *Baldwin v. Reese*, 541 U.S. 27, 29 (2004); *Anderson v. Benik*, 471 F.3d 811, 814 -15 (7th Cir. 2006); *Rodriguez v. Scillia*, 193 F.3d 913, 916 -17 (7th Cir. 1999). He asserts, however, that we can nevertheless consider his claim because he can demonstrate cause and prejudice for the failure to properly present it in state court. *Bolton v. Akpore*, 730 F.3d 685, 696 (7th Cir. 2013) ("[p]rocedural default may be excused … if the petitioner can show both cause for and prejudice from the default, or can demonstrate that the district court's failure to consider the claim would result in a fundamental miscarriage of justice."); *Anderson*, 471 F.3d at 815. As cause for the default, Ambrose alleges ineffective assistance of appellate counsel. That leads to the State's next contention, which is that Ambrose cannot rely on ineffective assistance of appellate counsel to demonstrate cause because there is no constitutional right to appellate counsel at all for such appeals.

In addressing this issue, both parties misunderstand this court's holding in *Brown v. Williams*, 599 F.3d 602, 609 (7th Cir. 2010). They both take as given that in *Brown* we held that there is no constitutional right to counsel in appeals of civil commitment proceedings under the Sexually Violent Persons Act. In fact, the point of contention for the parties is whether that "holding" in *Brown* should encompass proceedings under the SDPA as well, which is a distinct statute.[2] A number of district court decisions have similarly read *Brown*, but that is not a proper reading of our holding in *Brown*.

In *Brown*, we stated:

> When preserved, meritorious claims of ineffective assistance can excuse default. *Murray v. Carrier*, 477 U.S. 478, 488–89 (1986). A *constitutional* right to effective assistance must be the predicate to any such claim. *See Coleman v. Thompson*, 501 U.S. 722, 752 (1991). *Mr. Brown provides no authority establishing a constitutional right to appellate counsel to challenge a civil commitment.* [emphasis added] Where, as here, the right to counsel is a creation of state statute only, *see* Wis. Stat. § 980.03(2)(a), it follows that denial of that right does not establish the necessary cause to excuse the default of any underlying claims.

---

[2]  The Sexually Violent Persons Act applies to people who have previously been convicted of a sex offense, whereas the SDPA authorizes civil confinement of persons who have yet to be convicted of sex offenses. *Varner v. Monohan*, 460 F.3d 861, 865 (7th Cir. 2006).

*Id.* Our holding in *Brown* was not a determination of whether such a constitutional right could ever exist, but rather a recognition that Brown had failed to provide any argument for such a constitutional right. Examination of the briefs in the *Brown* appeal confirms this, in that the parties presented no argument whatsoever that there was a constitutional right to appellate counsel. We addressed the claim in the context of a right to counsel based on a state statute, Wis. Stat. § 980.03(2)(a), and our holding in *Brown* was that such a right must be grounded in the Constitution in order for ineffective assistance to constitute cause for procedural default. *Brown*, 599 F.3d at 609. We were never presented with the substantive argument as to whether a constitutional right existed, and therefore presented no opinion on that matter. In fact, our decision in *Brown* presumably would have been more expansive if we were actually addressing the substantive issue of whether indefinite civil confinement warrants the same type of access to appellate counsel as is required in appeals involving criminal confinement. See e.g. *Jenkins v. Director of Virginia Center for Behavioral Rehabilitation*, 624 S.E.2d 453, 460 (Va. 2006) and cases cited therein (analyzing due process law and concluding that "in view of the substantial liberty interest at stake in an involuntary civil commitment based upon Virginia's Sexually Violent Predators Act, the due process protections embodied in the federal and Virginia Constitutions mandate that the subject of the involuntary civil commitment process has the right to counsel at all significant stages of the judicial proceedings, including the appellate process.") The confusion in the courts as to our holding may well have stemmed from our footnote in *Brown*, in which we stated:

"Because we do not recognize a constitutional right to counsel in these circumstances, we cannot accept the cause-and-prejudice analysis urged by Mr. Brown, in which ineffective assistance provides the requisite cause." *Id.* at 609 n.7. Taken in isolation, that could be misread as a determination that there is no right to appellate counsel for proceedings under the Sexually Violent Persons Act, but given the context that a constitutional basis was never argued, the footnote is properly understood as merely a statement that no such right has been urged by Brown and therefore we cannot recognize such a right in this particular case. *Brown*, then, does not express an opinion at all on the merits of the issue of whether there is a constitutional right to appellate counsel in an appeal in cases involving indefinite civil confinement.

Unfortunately, the shared misinterpretation of *Brown* by the parties here, as well as the district court, skewed the arguments of the briefs on the merits of the issue, providing a less than ideal presentation of the issue for this court. We need not reach that issue, however, because it ultimately does not affect the outcome of this appeal. Ambrose was represented by counsel in his direct appeal, and has no meritorious argument that the performance was deficient or that he was prejudiced by that performance. Therefore, we can set aside the issue as to whether there is a constitutional right to appellate counsel because, even if that hurdle was met, there is no violation of that right here and therefore no cause for the procedural default.

In order to establish a claim of ineffective assistance of counsel, Ambrose must demonstrate that his counsel's performance fell below an objective standard of reasonableness and

that there is a reasonable probability that but for that deficient performance, the result of the proceeding would have been different. *Smith v. McKee*, 598 F.3d 374, 384 (7th Cir. 2010); *Strickland v. Washington*, 466 U.S. 668 (1984). Ambrose asserts that his attorney was deficient in failing to challenge the admission of the allegations of abuse in Arizona and Indiana through the testimony of Dr. Stanislaus. For that argument, he relies on *People v. Beshears*, 213 N.E.2d 55, 62 (Ill. App. 5th Dist. 1965), which held that in determining whether a person was sexually dangerous under the SDPA, it was reversible error to use evidence of arrests, unsupported by evidence of conviction, to prove the commission of crimes. Ambrose asserts that in light of *Beshears*, Ambrose's appellate counsel should have been aware that the Indiana and Arizona allegations were not competent evidence of prior crimes, and the failure to challenge such use constituted deficient performance.

There are multiple problems with this assertion. First, the evidence regarding the alleged out-of-state abuse was never admitted into evidence as proof that those incidents occurred, and therefore Ambrose's counsel did not err in failing to prevent the admission for that purpose. The evidence was presented not to prove the abuse allegations, but to cast light on the information considered by Dr. Stanislaus in the process of reaching her expert opinion. Such evidence may properly be considered, as indicated in Federal Rule of Evidence 703 which was adopted by the Illinois courts. See *Wilson v. Clark,* 417 N.E.2d 1322, 1326-27 (Ill. 1981). Under that rule, an expert may provide opinion testimony which relies on facts and data that are not independently admissible for the truth of the matter, as long as it is the type of information that experts in the field

would reasonably rely upon in forming an opinion. The underlying facts may be disclosed to the jury as long as the prejudice does not outweigh the probative value. See Fed. R. Evid. 703. As the plurality recognized in *Williams v. Illinois*, ___ U.S. ___, 132 S. Ct. 2221, 2234–35 (2012), under both the Illinois and Federal Rules of Evidence, an expert may rely on inadmissible evidence, and "[i]n bench trials, … both Illinois and the Federal Rules place no restriction on the revelation of such information to the factfinder." In this case, the testimony as to the allegations of out-of-state abuse was elicited in identifying the facts and data considered by Dr. Stanislaus in her evaluation of Ambrose, and was not admitted as evidence of the abuse itself. Rather than establishing that the abuse occurred, it simply established that those allegations were considered by Dr. Stanislaus in her evaluation. That contrasts with *Beshears*, in which law enforcement officers testified directly as to the arrests and the evidence was presented to establish that the incidents occurred and that he was sexually dangerous. Accordingly, Ambrose cannot succeed on his claim that he was denied due process by the admission of testimony of abuse in Indiana and Arizona, because no testimony was admitted into evidence as proof of such abuse. The evidence was properly admitted as evidence of the facts underlying the expert's opinion, and Ambrose has failed to argue that use of the allegations for that limited purpose was a denial of due process.

Moreover, as the plurality opinion in *Williams* noted, the potential for prejudice caused by the admission of such evidence is minimized in the context of a bench trial. *Id.* at 2235. "When the judge sits as the trier of fact, it is presumed

that the judge will understand the limited reason for the disclosure of the underlying inadmissible information and will not rely on that information for any improper purpose." *Id.*; *Harris v. Rivera*, 454 U.S. 339, 346 (1981); *United States v. Miller*, 800 F.2d 129, 136 (7th Cir. 1986) (noting that "as a legal matter the district court is presumed to have considered only relevant and admissible evidence in reaching its factual findings.") Rule 703 effectively recognizes that distinction in limiting the admissibility of such evidence only as to juries. Accordingly, any potential for prejudice is minimal given that the hearing was conducted before the judge rather than a jury, and there is no reason to believe the judge relied upon that information for an improper purpose such that Ambrose would be prejudiced.

Ambrose argues, however, that because this was a recovery application rather than an initial civil commitment, that information had no proper application whatsoever and must have fundamentally impacted the fairness of the trial. This argument is without merit. The issue in a recovery application is whether the sexually dangerous person has recovered, but that does not impose some arbitrary time limitation that restricts the court to evidence following the commitment itself. In determining whether a person has overcome a mental disorder under the SDPA, see 725 ILCS 205/1.01, the basis for that original determination of a mental disorder is certainly relevant in ascertaining whether that disorder is no longer manifest. In fact, it would be hard to conceive of a situation in which such information would not in fact be relevant to such a determination. The nature of the proceeding does not, therefore, render the information irrelevant and prejudicial.

At the recovery hearing, the testimony revealed that Ambrose categorically denied that he was a sex offender, and refused to participate in treatment at all. In denying the recovery application, the trial court noted that the purpose of the hearing was not to relitigate the original determination that Ambrose suffered from a mental disorder that rendered him a sexually dangerous person, and noted Ambrose's complete lack of interest in treatment in ultimately concluding that Ambrose continued to suffer from that mental disorder. Ambrose does not dispute those contentions that he failed to acknowledge his mental disorder or avail himself of treatment, and those findings further doom any claim of prejudice here. Given that Ambrose has failed to acknowledge the history that formed the basis for a determination that he is sexually dangerous, and has refused to participate in any treatment for that disorder, there is no basis for this court to conclude that absent the reference to the out-of-state abuse allegations, the outcome of the proceeding would have been different. Ambrose therefore has failed to demonstrate cause and prejudice to excuse his procedural default, and the district court properly dismissed the petition. The decision of the district court is AFFIRMED.