**Janet A. RILEY, Plaintiff–Appellant,**

v.

**ELKHART COMMUNITY SCHOOLS,
Defendant–Appellee.**

No. 15-3166

United States Court of Appeals,
Seventh Circuit.

Argued April 11, 2016

Decided July 22, 2016

Robin G. Remley, Attorney, Law Offices of Robin Remley, LLC., Crown Point, IN, for Plaintiff–Appellant.

Brent R. Borg, Attorneys, Church, Church, Hittle & Antrim, Fishers, IN, Monica J. Conrad, Attorney, Church, Church, Hittle & Antrim, Merriville, IN, Alexander P. Pinegar, Attorney, Church, Church, Hittle & Antrim, Noblesville, IN, for Defendant–Appellee.

Before BAUER and WILLIAMS, Circuit Judges, and ADELMAN,[*] District Judge.

BAUER, Circuit Judge.

Plaintiff-appellant, Janet Riley, sued defendant-appellee, Elkhart Community Schools ("ECS"), for discrimination under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e ("Title VII"), discrimination under the Age Discrimination in Employment Act, 29 U.S.C. § 621 ("ADEA"), and violation of her equal rights under 42 U.S.C. § 1981. Riley roots her causes of action in ECS's failure to promote her to various positions during her career as a teacher with the school district. The district court granted summary judgment for ECS on all claims, based on procedural bars and insufficient evidence. We affirm.

## I. BACKGROUND

ECS has employed Riley, an African-American female, as a teacher since 1980. She has served in multiple capacities during her tenure. Currently, she teaches business education at Elkhart Central High School and leads evening and summer adult education classes. She has an administrator's license and is pursuing her doctorate in education. In 2010, she was named the ECS Teacher of the Year.

From 2005 through 2013, Riley unsuccessfully applied for twelve different positions with ECS. Seven positions are relevant to this appeal. In 2007, Riley applied for an assistant principal position at Elkhart Memorial High School. ECS hired Carey Anderson, who is white. In 2008, Riley again applied for an assistant principal position, this time at Central High School. ECS hired Andrew Bridell, who is white. In 2009, Riley applied for two more assistant principal positions, one at Northside Middle School, the other at Memorial High School. ECS hired Mary Wisniewski, who is white, for the position at Northside Middle School; it hired Krista Hennings, who is African-American, for the position at Memorial High School.

In 2010, ECS posted two academic dean positions, but did not advertise them as administrative positions. Riley did not apply for these positions; ECS hired two white males under the age of 40 for the openings. In both 2010 and 2013, Riley

---

[*] Of the United States District Court for the Eastern District of Wisconsin, sitting by designation.

applied for the coordinator position of the Blazer Connection program, an after-school tutoring program. In both instances, ECS hired white males. Finally, in the spring of 2012, Riley again applied for two open assistant principal positions, one at Central High School and the other at Memorial High School. ECS appointed a committee to screen potential candidates. The screening committee reviewed the candidates and made recommendations to the superintendent. The committee chose Riley for an interview, but recommended Jason Gratsy, a white male under 40, and JaNeva Adams, an African-American female under 40, for the openings. The committee noted that Gratsy and Adams performed better in their interviews than Riley; ECS ultimately hired Gratsy and Adams.

On May 12, 2011, Riley filed an Equal Employment Opportunity Commission charge against ECS, claiming that race, sex, and age discrimination were the reasons that ECS had not promoted her to any of the positions for which she had applied. The EEOC sent Riley a right to sue letter on April 26, 2012.

On July 24, 2012, Riley filed a *pro se* complaint in federal court alleging discrimination, harassment, libel, defamation, and retaliation by ECS. On August 8, 2012, Riley filed an amended complaint, alleging violations of Title VII race and sex discrimination, ADEA age discrimination, and violation of equal rights under § 1981. She filed both incarnations of the complaint in the Southern District of Indiana, which transferred the case to the Northern District of Indiana, where both parties reside.

Riley retained counsel on November 26, 2012, and the parties agreed on January 16, 2013, to have a magistrate judge adjudicate the dispute. On May 13, 2015, ECS moved for summary judgment. The district court granted summary judgment for ECS on all counts, dismissing some claims on procedural grounds, and dismissing the remaining claims because Riley had failed to produce sufficient evidence.

Riley appealed.

## II. DISCUSSION

 First, like the district court, we winnow down Riley's bevy of claims to those which we will assess on their merits. The other claims fail for procedural reasons. Some claims appear in her original complaint but not in the amended complaint; an amended complaint supersedes any prior complaint, and becomes the operative complaint. *See Anderson v. Donahoe*, 699 F.3d 989, 997 (7th Cir. 2012) (citations omitted). So any claim in Riley's original complaint not included in her amended complaint is extinguished. *Id.* These include her claims of hostile work environment and disparate treatment.

 Riley argues that we should be lenient towards her because she drafted the original and amended complaints without assistance of an attorney. *See, e.g., Ambrose v. Roeckeman*, 749 F.3d 615, 618 (7th Cir. 2014) (citations omitted) ("[w]e have repeatedly emphasized that *pro se* petitions ... should be held to standards less stringent than formal pleadings drafted by attorneys"). However, while Riley did draft her complaints *pro se*, she has had counsel since November 2012. Since retaining counsel, she has never moved to amend her complaint. Having had counsel for over three years, and ample opportunity to amend her complaint, she is not entitled to the usual *pro se* leniency.

 Additionally, some of Riley's claims are time-barred. Both Title VII claims and ADEA claims must be filed within 300 days of the alleged discriminatory act or unlawful practice. 42 U.S.C. § 2000e–5(e)(1) (Title VII statute of limitations); 29 U.S.C. § 626(d)(1)(B) (ADEA

statute of limitations). Section 1981 claims must be filed within four years of the alleged discriminatory act. 28 U.S.C. § 1658; *Campbell v. Forest Pres. Dist. of Cook Cty., Ill.*, 752 F.3d 665, 667–68 (7th Cir. 2014) (citing *Jones v. R.R. Donnelley & Sons Co.*, 541 U.S. 369, 382–83, 124 S.Ct. 1836, 158 L.Ed.2d 645 (2004)). Here, Riley filed her first charge of discrimination— her EEOC complaint—on May 12, 2011. Any Title VII or ADEA violation related to an incident occurring before July 16, 2010 (300 days before the filing), and any alleged § 1981 violation related to an incident occurring before May 12, 2007 (four years before the filing), are therefore time-barred. This eliminates Riley's Title VII claims relating to the positions for which she applied in 2005, 2006, 2007, 2008, and 2009. It also eliminates her § 1981 claims related to the position for which she applied in 2005 and 2006. The district court ruled that Riley's § 1981 failure to promote claims relating to four assistant principal positions for which she applied in 2007, 2008, and 2009 were also time-barred. This was incorrect: the claims were brought within the four-year statute of limitations period.

When the dust settles, these four § 1981 claims as well as three Title VII claims remain. All of these causes of action are for failure to promote. The § 1981 claims relate to the following positions: (1) assistant principal available in 2007; (2) assistant principal available in 2008; (3) assistant principal at Central High School available in 2009; and (4) assistant principal at Memorial High School available in 2009. The Title VII claims relate to the following positions: (1) the academic dean positions available in 2010; (2) the Blazer Connection coordinator position available in 2010;[1] and (3) the assistant principal positions available in 2012.

■ The district court correctly held that Riley failed to produce sufficient evidence for any of these claims to survive summary judgment. We review the grant of summary judgment *de novo*, construing the facts in the light most favorable to the non-moving party, Riley. *E.g.*, *Chaib v. Geo Group, Inc.*, 819 F.3d 337, 340 (7th Cir. 2016). Summary judgment is appropriate and the moving party is entitled to judgment as a matter of law where "there is no genuine dispute as to any material fact." Fed. R. Civ. P. 56(a); *accord. Boss v. Castro*, 816 F.3d 910, 916 (7th Cir. 2016). Here, summary judgment for ECS on these claims is appropriate because Riley either failed to produce evidence entirely or produced evidence that did not create a triable issue of fact under the relevant legal framework.

■ To proceed to trial on a failure to promote claim, a plaintiff either must produce "sufficient direct or circumstantial evidence that [the employer's] promotion decisions were intentionally discriminatory or make an indirect case of discrimination" under the burden-shifting method of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–04, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). *Adams v. City of Indianapolis*, 742 F.3d 720, 735 (7th Cir. 2014). Here, Riley has chosen the indirect path. Under this rubric, Riley must first produce evidence of a *prima facie* case for failure to promote; if she does so, ECS must then produce evidence of "a legitimate nondiscriminatory reason for the employment ac-

1. We do not consider her 2013 application for this position. On August 14, 2014, Riley filed an EEOC complaint regarding her failure to receive the position in 2013. She received a right to sue letter from the EEOC on December 11, 2014, but never incorporated the allegations from this second right to sue letter into her complaint. Any allegation not found in the amended complaint is forfeited. *See Anderson*, 699 F.3d at 997. This includes her 2013 application for the Blazer Connection coordinator position.

tion"; if the employer produces evidence of a legitimate reason, the plaintiff must then produce evidence that the employer's "stated reason is a pretext." *Simpson v. Beaver Dam Cmty. Hosps., Inc.*, 780 F.3d 784, 790 (7th Cir. 2015) (citing *McDonnell Douglas*, 411 U.S. at 802–04, 93 S.Ct. 1817).

■ To demonstrate a *prima facie* case for failure to promote, a plaintiff must produce evidence showing that: (1) she was a member of a protected class; (2) she was qualified for the position sought; (3) she was rejected for the position; and (4) the employer promoted someone outside of the protected class who was not better qualified for the position. *Jaburek v. Foxx*, 813 F.3d 626, 631 (7th Cir. 2016) (citation omitted). Summary judgment for the employer is appropriate if the employee fails to establish any of the elements of a *prima facie* case for failure to promote. *See Atanus v. Perry*, 520 F.3d 662, 673 (7th Cir. 2008) (citation omitted).

■ First, Riley cannot prove a *prima facie* case for the § 1981 claim regarding the assistant principal position for which she applied in 2009. Section 1981 causes of action are limited to discrimination claims based on race. *See McDonald v. Santa Fe Trail Transp. Co.*, 427 U.S. 273, 285–86, 96 S.Ct. 2574, 49 L.Ed.2d 493 (1976); *Humphries v. CBOCS West, Inc.*, 474 F.3d 387, 402–03 (7th Cir. 2007) (section 1981 establishes causes of action for racial discrimination as well as retaliation for opposing racial discrimination). ECS hired Krista Hennings, an African-Ameri-

can, for the assistant principal position at Memorial available in 2009. Therefore, Riley cannot show that ECS promoted someone outside of her protected class for the position she sought. *See Jaburek*, 813 F.3d at 631. She cannot establish a *prima facie* case for this § 1981 claim as a matter of law.

■ Second, Riley cannot prove a *prima facie* case regarding the 2010 academic dean positions because she never applied for the positions. So ECS could not have rejected her.[2] *See Jaburek*, 813 F.3d at 631 (citing *Johnson v. Gen. Bd. of Pension & Health Benefits of United Methodist Church*, 733 F.3d 722, 728 (7th Cir. 2013)) (summary judgment for defendant on Title VII failure to promote claim appropriate where plaintiff never applied for promotion). Because Riley failed to produce evidence that she was rejected for the positions, she cannot establish a *prima facie* case; the claims fail as a matter of law.

■ Third, Riley did not prove a *prima facie* case regarding the Blazer Connection coordinator position, because being rejected for this position does not constitute a sufficiently adverse employment action. Failure to promote claims are only actionable if not receiving the position is a "materially adverse" employment action. *Carter v. Chi. State Univ.*, 778 F.3d 651, 660 (7th Cir. 2015); *see also Atanus*, 520 F.3d at 677. Generally, this means that the position for which the plaintiff was rejected offered markedly greater compensation, responsibilities, or title. *See Hilt-*

---

2. Riley argues that she did not apply for the positions because she did not know that they were administrative positions. Citing Eighth Circuit dicta, Riley argues that the application requirement can be excused where the employer has no formal application process or where the employee is unaware of the opportunity. *See Kehoe v. Anheuser–Busch, Inc.*, 96 F.3d 1095, 1105 n. 13 (8th Cir. 1996). Even if this were established Eighth Circuit law and we adopted it, Riley's own deposition undermines her argument. There, she stated that she knew of the position and did not apply because the position required certain teaching certifications that she lacked. There is no evidence that surreptitious ECS action precluded her from applying.

*Dyson v. City of Chicago*, 282 F.3d 456, 465–66 (7th Cir. 2002). Here, Riley presented no evidence of how the Blazer Connection position offered a significant pay raise, increase in responsibilities, or boost in title. The district court appropriately called it a lateral move. Riley's failure to produce evidence that being rejected for the position was an adverse employment action dooms her claim as a matter of law.

▮ Riley's remaining claims fail because she has not produced sufficient evidence of pretext. Regarding the 2012 assistant principal positions, Riley has produced evidence of a *prima facie* case for age discrimination: (1) she is over 40 years old; (2) she has extensive teaching experience and an administrator's license, so she is qualified; (3) ECS rejected her for the positions; and (4) ECS instead hired two people outside of the protected age group—both Gratsy and Adams were under 40—who did not have her teaching experience.[3]

▮ But ECS has produced evidence of a nondiscriminatory reason for not hiring Riley: both Adams and Gratsy were more qualified for the position than Riley. *See Scruggs v. Garst Seed Co.*, 587 F.3d

832, 838 (7th Cir. 2009) (hiring someone whom employer believes is better qualified for position is legitimate, nondiscriminatory reason for action). ECS produced the list of factors that the screening committee considered in recommending candidates. These factors were:

a. [Administrative] [c]ertification;

b. Skills, abilities, attributes, training, and education which the applicant possesses which would be necessary or desirable for an [ECS] administrator, and any other employment requirements imposed by law;

c. Contribution the applicant is likely to make to students and/or the school system due to special training and/or competence;

d. Ability to communicate and relate effectively to others;

e. Good past performance in position(s) with [ECS] [s]chools or other school corporations;

f. Opportunity for professional growth of the applicant; and

g. Length of service of the applicant in the [ECS].

---

**3.** Riley cannot establish a *prima facie* case for race or sex discrimination because Adams, like Riley, is an African-American female. But the effect of hiring Adams on Riley's race and sex discrimination claim relating to Gratsy is hazier. The district court essentially viewed the position as one position with two openings. This means that because ECS hired an African-American female for the position, *both* of Riley's race and sex discrimination claims fail, regardless of whether ECS also hired a person who is outside Riley's protected race and sex classes. Riley argues that we should view the position as two distinct positions giving rise to two distinct failure to promote claims. This means that even if ECS hired Adams, Riley can still bring a separate claim relating to ECS hiring Gratsy.

It is hard to divine from the record whether Riley raised this argument in the district court, so she has likely waived the argument. *E.g., Homoky v. Ogden*, 816 F.3d 448, 455 (7th Cir. 2016). Further, she cites no precedent for her position. But the district court's ruling also cites no precedent, and it would be improper to hold that the opinion reflects our jurisprudence on the issue. The few analogous cases could be used to justify either position. *See, e.g., Jordan v. City of Gary, Ind.*, 396 F.3d 825 (7th Cir. 2005); *Rooks v. Girl Scouts of Chicago*, 95 F.3d 1154 (7th Cir. 1996) (unpublished opinion). Ultimately, we find no reason to decide the topic here: even if we were to agree with Riley and find that she has produced evidence of a *prima facie* case for race and sex discrimination related to hiring Gratsy, she has not produced sufficient evidence of pretext, and her claim would still fail as a matter of law.

ECS listed the factors in order of priority. Thus, length of service in ECS—which Riley argues differentiates her from Gratsy and Adams—was the *least* important factor for the committee's consideration.

ECS also produced the affidavit of Krista Hennings, who was a member of the screening committee. Hennings averred that the committee believed that Adams and Gratsy were the best at answering interview questions, specifically the questions relating to particular ways to improve the respective school to which the applicant would be assigned. Hennings noted how Gratsy's and Adams's answers to these specific questions related directly to factors c, d, and f of the committee's assessment rubric. Hennings also stated that Riley did not communicate as effectively in her interview; she tended to criticize without providing potential solutions. Hennings also noted that the committee did not view Riley's teaching experience with ECS as dispositive, given that seniority was the least important factor in the screening committee's rubric.

 In response to ECS's evidence, Riley needed to produce evidence of pretext. She has not done so. Simply put, pretext is a lie—"a phony reason for some action." *Smith v. Chi. Transit Auth.*, 806 F.3d 900, 905 (7th Cir. 2015) (quotation marks and citation omitted). Riley produced evidence that she has many years of teaching experience, has an administrator's license, and performed well in the past, as evidenced by her Teacher of the Year award; nevertheless, ECS hired two people with less teaching experience. But we have set a high evidentiary bar for pretext. Evidence of Riley's qualifications "only would serve as evidence of pretext if the differences between her and [Adams and Gratsy] were 'so favorable to the plaintiff that there can be no dispute among reasonable persons of impartial judgment that the plaintiff was *clearly bet-*

*ter qualified* for the position at issue.'" *Hobbs v. City of Chicago*, 573 F.3d 454, 462 (7th Cir. 2009) (emphasis added) (quoting *Millbrook v. IBP, Inc.*, 280 F.3d 1169, 1180 (7th Cir. 2002)) (other citation omitted).

Riley has not produced evidence that she was *clearly* better qualified for the position than Gratsy and Adams. The evidence presented shows that while Riley had more *teaching* experience, all three had comparable *administrative* experience and training. Thus, all three were on the same plane for the assistant principal position, an administrative position. Further, Riley has produced no evidence that contradicts Hennings's statements regarding the answers of the candidates to the interview questions. Finally, the evidence produced shows that ECS valued length of service to ECS as the least important consideration for recommending a candidate for the position. Therefore, since there is no evidence that she was clearly better qualified than either Gratsy or Adams, Riley's age discrimination claim fails as a matter of law.

 Nor is there sufficient evidence of pretext for the § 1981 claims relating to her 2007, 2008, and 2009 applications to assistant principal positions. In each instance, ECS hired a white woman or man instead of Riley. She argues that she was better qualified than these three because she had more teaching experience and had worked at ECS longer. But this is not sufficient evidence that she was *clearly* better qualified for the positions. As with the Title VII age discrimination claim related to the 2012 assistant principal positions, that Riley had more teaching experience does not carry particular weight. The position was administrative, and each of the three people that ECS chose obtained his or her administrator's license at the same time as Riley. Thus, Riley had com-

parable administrative experience and training as the three candidates whom ECS eventually hired. Riley's only evidence of better qualifications is that she has more seniority than the people hired. But seniority is "not enough to meet her burden" for pretext. *Sublett v. John Wiley & Sons, Inc.*, 463 F.3d 731, 738 (7th Cir. 2006) (citations omitted).

A court is not a "super personnel department that second-guesses employers' business judgments." *Millbrook*, 280 F.3d at 1181 (quotation marks and citation omitted). Judicial intervention is permissible if there is sufficient evidence of "unlawful hiring practices," particularly where an employer fails to hire or promote someone clearly better qualified than the person chosen. *Id.* at 1180–81; *see Deines v. Texas Dept. of Prot. and Regulatory Services*, 164 F.3d 277, 279 (5th Cir. 1999), *quoted in Millbrook*, 280 F.3d at 1179–80 ("The single issue for the trier of fact is whether the employer's selection of a particular applicant over the plaintiff was motivated by discrimination."). But that is not the case here, because there is not sufficient evidence that Riley was clearly better qualified than any of the three people chosen. Riley's § 1981 claims fail as a matter of law.

## III. CONCLUSION

We AFFIRM the grant of summary judgment in favor of ECS.